IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTTSDALE INSURANCE COMPANY,   )
                                )
           Plaintiff,           )
                                )
v.                              )   No.  06-1009-WEB
                                )
REBECCA McREYNOLDS,             )
                                )
           Defendant.           )
                                )

**Memorandum and Order**

This matter is before the court on Scottsdale's renewed Motion for Judgment as a Matter of Law or, alternatively, for a New Trial.  Doc. 116.  The motion is fully briefed and ready for decision.  The court concludes that further oral argument would not assist in deciding the issues presented.

At the outset, the court notes that this case was competently presented by counsel for both sides.  Counsel represented the interests of their clients well and presented their positions in a highly professional manner.

I. *Background*.

The following is a brief summary of the case, which arises under the court's diversity jurisdiction.  In 2003, defendant Rebecca McReynolds obtained a homeowner's insurance policy from Scottsdale Insurance Company for her home in Cunningham, Kansas.  Among other things, the policy covered property loss caused by fire.  It excluded coverage for any intentional loss.  It also contained conditions requiring the insured to cooperate in the investigation of a claim, to prepare an inventory of lost property, and to submit to an examination under oath as often as the

company reasonably required. On the night of November 27, 2004, a fire damaged Ms. McReynolds' home and personal property. Defendant thereafter made a claim for loss under the policy.

At the time of the fire, Ms. McReynolds made a 911 call to the police. She indicated she had been sleeping in the home when she heard noises from unknown intruders. She excitedly told the dispatcher the intruders were trying to break into her bedroom. At some point during the call, she noticed the intruders were no longer trying to get in the bedroom, and she realized the house was on fire. She climbed out of a window to escape the fire. She later gave a similar account of the incident to law enforcement officers when they arrived on the scene and interviewed her. No intruders were seen or found, and the severe damage from the fire made the determination of a cause difficult.

Scottsdale investigated the claim. The Kansas Fire Marshal also conducted an investigation. Ms. McReynolds gave interviews to Scottsdale investigators and law enforcement officers. She was not under oath during these interviews.

An investigator for the Kansas Fire Marshal prepared a report in which he concluded that the likely cause of the fire was arson by the defendant. He found the defendant's version of events was not credible. An investigator for Scottsdale, meanwhile, concluded that the fire was deliberately set by unknown intruders who entered the home. He found no evidence that Ms. McReynolds was involved in setting the fire.

On March 9, 2005, Ms. McReynolds' attorney sent a demand letter to Scottsdale seeking full payment under the policy. On March 14, 2005, Scottsdale responded with a letter stating it had not received a list of personal property from the defendant, that it needed her to sign a

release, and that after this was accomplished arrangements would be made to take a statement from her under oath.  On May 4, 2005, a charge of arson was filed against Ms. McReynolds in Reno County District Court based upon the fire in her home.  After Scottsdale sent follow-up letters, defendant's attorney responded with a letter stating that Ms. McReynolds would not be proceeding with her civil claim until the criminal case was resolved. Scottsdale responded by construing the attorney's letter as a refusal to provide requested information.  Scottsdale sent a letter stating that unless the defendant presented herself for an examination under oath within 30 days, her claim would be denied for violation of the conditions of the policy.  When she did not do so, counsel for Scottsdale sent a letter on October 24, 2005, stating that her refusal was a violation of the conditions of the policy, and that the file was being closed and the claim was denied.

Scottsdale filed the instant action on January 11, 2006, seeking a declaratory judgment that it was not obligated to pay the claim.  The complaint alleged that no coverage was owed because the defendant intentionally started the fire in her home, because she made false statements to Scottsdale, and because she failed to cooperate in its investigation.  On January 16, 2006, Scottsdale sent a letter to Ms. McReynolds stating that coverage was denied for failure to cooperate with the investigation and because "the preponderance of the available evidence reveals that you intentionally caused the loss."

On January 23, 3006, at a preliminary hearing in state court, a Reno County District Judge dismissed the arson charge against Ms. McReynolds, finding the state had not met its burden of proof.

Scottsdale later amended its complaint to seek recovery of approximately $32,551.37

previously paid by Scottsdale in connection with the claim, including a payment of $27,551.37 to Citizens Bank of Kansas to pay off the bank's mortgage on the home. Defendant McReynolds answered and counter-claimed, denying that she intentionally started the fire and asserting that Scottsdale breached the policy by failing to pay the claim. Defendant sought money damages and attorney's fees.

A Pretrial Order was filed on August 29, 2007. Included in the Pretrial Order were defendant's contentions that she cooperated with Scottsdale's investigation, that any failure to cooperate did not prejudice Scottsdale, and that she did not start the fire that damaged her home. She also asserted that she had a long history of mental illness, and that while she did not believe she started the fire, if in fact she did so it was an accident and was not an intentional act on her part, but was the result of a "disassociative episode."

Both parties filed motions for summary judgment. Plaintiff Scottsdale's argument requested "that an order be entered against defendant setting forth the fact that due to defendant's failure to abide by the terms of the policy, there is no coverage under the subject policy." Doc. 67-2, at 2. The court denied the motions in an order filed October 21, 2008. In so doing, the court stated that the uncontroverted facts presented on summary judgment showed a breach by Ms. McReynolds of the clause requiring her to submit to an examination under oath and the clause requiring her to provide records, but there was still a genuine issue of fact as to whether Scottsdale was substantially prejudiced thereby. Additionally, the court found an issue of fact as to whether she provided an inventory of personal property. Accordingly, the court denied Scottsdale's motion for summary judgment for the alleged non-cooperation. The court likewise denied defendant McReynold's motion.

The case was tried to a jury from June 2-9, 2009.  The court informed the jury regarding the parties' contentions, including the fact that Scottsdale claimed Ms. McReynolds was not entitled to coverage because she breached a duty under the policy to cooperate in its investigation, allegedly resulting in prejudice to Scottsdale, and that Ms. McReynolds denied that she failed to cooperate and denied any prejudice.  Evidence was presented at trial concerning Ms. McReynolds' cooperation or lack thereof, and at one or more points during the trial the court overruled objections from Scottsdale that certain evidence was irrelevant because the court had already determined that Ms. McReynolds had breached the policy by not cooperating.  The court concluded that the issue was for the jury to determine.  In a special verdict returned on January 9, 2009, the jury found that Ms. McReynolds did not intentionally start the fire in her home, that she did not fail to cooperate as required by the policy, and that she was entitled to recover an additional $76,082.11 under the policy.  Judgment was entered accordingly.  Doc. 114.

    II.  *Motion for Judgment as a Matter of Law or for New Trial*.

Scottsdale first argues it is entitled to judgment as a matter of law because the jury's verdict was allegedly contrary to the Kansas Arson Reporting Immunity Act, K.S.A. § 31-401, et seq.  Scottsdale argues the verdict resulted from defendant arguing to the jury that Scottsdale's request for an examination under oath and other requests were unreasonable because Scottsdale was conspiring with the Fire Marshal and was "attempting to convict Defendant of arson," such that its requests were made in "bad faith."  It contends such arguments are contrary to the Immunity Act, which requires an insurance company to provide evidence to the appropriate law enforcement agency whenever it has reason to believe a fire is not accident, and the Act provides that any insurance company which releases information pursuant to that duty shall be immune

5

from any civil liability by reason of providing such information.  "In this case is it very clear that the jury adopted the theories laid out by Defendant and as a result of this adoption, found for Defendant and held Plaintiff liable for communicating with the State Fire Marshall."  Doc. 116 at 8.

Secondly, Scottsdale argues it is entitled to judgment because the defendant's claim for recovery of attorney's fees "creates the substantial prejudice that was missing when the court ruled on plaintiff's motion for summary judgment."  Doc. 116 at 8.  Scottsdale argues it is "undisputed" that Ms. McReynolds did not cooperate with its investigation, and that her refusal to provide an examination under oath and execute a release made it necessary for Scottsdale to file suit against her in order to get the information necessary to adjust the claim.  The claim for attorney's fees now "creates the 'substantial prejudice' that was only a possibility at all times prior to the jury verdict."  *Id*. at 9.

Scottsdale alternatively contends it is entitled to a new trial because the defendant presented "for the first time during cross examination of Plaintiff's first witness (the Defendant) three issues not set out in the Pretrial Order": the notion that Scottsdale conspired with the State Fire Marshal, the assertion that Scottsdale's requests for cooperation were done in bad faith, and the contention that Scottsdale's requests for cooperation were unreasonable.  *Id*. at 12.  Scottsdale contends this was a "flagrant violation" of the Pretrial Order and justifies a new trial.  Scottsdale further argues a new trial is warranted because the verdict was contrary to the evidence and "therefore must have been influenced by passion and prejudice."  *Id*.  Scottsdale points out that the jury's finding was contrary to the court's statement in its summary judgment ruling that the evidence showed the defendant breached two of the cooperation clauses in the

6

policy.  It also argues that the evidence could not support a finding that the defendant provided Scottsdale with a personal property inventory list.

   III.  *Discussion*.

   Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue...." Fed.R.Civ.P. 50(a)(1).  It should only be granted if the evidence "points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Strickland v. United Parcel Service, Inc.,* 555 F.3d 1224, 1228 (10th Cir. 2009).  In determining the matter, the court may not weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. *Kellogg v. Energy Safety Services, Inc*., 544 F.3d 1121, 1126 (10th Cir. 2008).  Judgment must be granted, however, if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Id*.

   A motion for new trial under Rule 59(a), by contrast, is committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  Such a motion is "'not regarded with favor and should only be granted with great caution.' " *Wirtz v. Kansas Farm Bureau Services, Inc*., 311 F.Supp.2d 1197, 1226 (D.Kan.2004) [citation omitted].  It "'should be granted when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done.' " *Id*.

   Insofar as the issue of defendant's cooperation under the policy is concerned, the court first concludes that the court's ruling on summary judgment was not a final determination of that issue.  Although Rule 56 allows – and even encourages – the court to determine on summary

judgment what material facts are not genuinely at issue, such facts are treated as established in the action only to the extent that the court so specifies in an order, and typically only after the court has "interrogat[ed] the attorneys." Fed.R.Civ.P. 56(d)(1). In this instance, plaintiff requested summary judgment on its claim that it owed no duty to pay the claim under the policy. It did not seek partial summary judgment on specific subsidiary factual issues and did not seek a declaration that particular facts relating to the defendant's cooperation were established for purposes of trial. Similarly, the court did not grant Scottsdale a partial summary judgment on those factual issues; the court denied the motions in their entirety. Absent some prior notice that a determination of specific facts is at issue on a summary judgment motion, the court would not ordinarily treat a summary judgment ruling as conclusively establishing the facts discussed therein for purposes of trial.[1] Even if it were otherwise, a summary judgment ruling is interlocutory in character, and may be revised or modified at any time prior to entry of final judgment. *See* Fed.R.Civ.P. 54(b) (any order that does not end the action as to any claims may be revised at any time before the entry of a judgment adjudicating all claims); *Zimzores v. Veterans Administration*, 778 F.2d 264, 266 (5th Cir.1985) (summary judgment on the issue of liability was "plainly interlocutory" and therefore "subject to being revised, modified or vacated by the trial court."). Under the circumstances presented, the court concludes that the summary judgment order did not establish as a matter of law that Ms. McReynolds breached any of the cooperation clauses. That issue was appropriately one for the jury, and insofar as the court is

---

[1] Absent a clear request in the summary judgment motion to find that specific facts are established as a matter of law, the opposing party may choose to defend the summary motion merely by presenting evidence sufficient to show an issue of fact on some other element of the plaintiff's claim – substantial prejudice, for example – which is sufficient to defeat a request for summary judgment on the claim as a whole.

now concerned, the pertinent question is whether the evidence presented at trial was legally sufficient to support the jury's verdict.

Additionally, insofar as plaintiff's arguments about defendant's alleged violation of the Pretrial Order are concerned, the court finds no "flagrant violation" of that order. The defendant's contentions in the Pretrial Order included an assertion that she cooperated in Scottsdale's investigation. Doc. 60 at 6. She likewise included it as a defense to the plaintiff's claim. *Id*. at 8-9. Finally, both the plaintiff and the defendant identified the defendant's cooperation or lack thereof as a factual issue for trial. *Id*. at 10-11. These issues fairly encompass arguments by the defendant that she substantially complied with Scottsdale's requests or that the requests went beyond what was required under the policy. Plaintiff can claim no unfair surprise from the fact that defendant presented various evidence and arguments in support of her assertion that she cooperated in Scottsdale's investigation.

Plaintiff's arguments regarding the Kansas Arson Reporting Immunity Act present a more complicated issue. The Act, in brief, provides that an insurer may be required to provide any evidence in its possession relating to a fire loss to the Kansas Fire Marshal, and in return provides the insurer with immunity from civil liability for any such reporting. Given the immunity of the Act, it would be inappropriate for a party to argue that the mere fact of communication and disclosure between an insurer and the Fire Marshal shows a "conspiracy" or something improper. But while Scottsdale argues that the jury's verdict was necessarily based upon improper arguments of this type about Scottsdale's communications with the Fire Marshal, the defendant legitimately could – and did – argue that Scottsdale's demand was not reasonably required at the time it was made because it would have forced the defendant to give a statement

9

under oath while the criminal case against her was pending.[2]

Assuming the jury viewed the evidence and all reasonable inferences in the light most favorable to defendant, it could reasonably find that Ms. McReynolds was willing to undergo an examination under oath once the criminal action against her was resolved, but that Scottsdale did not afford her an adequate opportunity to do so before it denied coverage. In March of 2005, Scottsdale requested a release from the defendant, and indicated its intent to take a statement under oath after it obtained further information. On May 4, 2005, Ms. McReynolds was charged with arson. Mr. Juhnke's letter to Scottsdale of June 27, 2005, pointed out that McReynolds was facing criminal charges and stated that she "will not be proceeding with the civil case *until the criminal case is resolved.*" (Emphasis added). Although Scottsdale construed this as a refusal to cooperate, and subsequently denied coverage on that basis, a jury could conclude that Juhnke's letter evinced a willingness to provide the requested information once the criminal charges were resolved. Scottsdale did not await the resolution of the charges, however; it sent a denial letter in October of 2005 for failure to cooperate. Scottsdale has not identified any specific or irreparable prejudice it would have suffered from having to await the resolution of the criminal case. Whether Scottsdale's demand for the giving of sworn statement during the pendency of the criminal was reasonably required was a genuine issue of fact for the jury to determine. As Judge

---

[2] To the extent the defense argued that Scottsdale "conspired" with the Fire Marshal to get Ms. McReynolds convicted, the court agrees with plaintiff that such arguments would be inappropriate if they were premised on good faith disclosures by Scottsdale required by the Act. *But cf.* K.S.A. § 31-403(e) (immunity of the Act inapplicable in the case of gross negligence or bad faith by the insurer). But even assuming the defense made an improper comment about such matters in this case, the court cannot say that any such comment likely affected the jury's verdict, nor can the court say that such remarks caused substantial prejudice in a case competently presented over the course of five or six days.

O'Connor pointed out in *Weathers v. Am. Family Mut. Ins. Co.*, 793 F.Supp. 1002 (D. Kan. 1992), the effect of the arson reporting immunity act is that all information garnered by the insurer – including an insured's statements under oath – may be turned over to the Kansas Fire Marshal.  Such an arrangement can implicate an insured's Fifth Amendment privilege against self-incrimination.  *Id*., 793 F.Supp. at 1021-22.  The jury could find that Scottsdale's demand for a sworn statement – with no apparent option for postponing the statement until after the criminal case – was not reasonably required, because it put Ms. McReynolds in the position of having to compromise her rights in the criminal action or risk a violation of the insurance policy. *See id*.  Scottsdale's attempts to distinguish the *Weathers* case is not persuasive.  *See* Doc. 127 at 6-8. Under all of the circumstances of this case, the jury could find that Ms. McReynold's refusal to give a statement under oath during the period she was under criminal charge was not a breach of her duty of cooperation under the policy.³

As defendant points out, there was other evidence the jury could consider in determining whether the defendant complied with her duties of cooperation.  She signed an "Access Authorization Form" allowing Scottsdale to enter, inspect and test physical evidence relating to the fire.  She signed a form in support of her claim stating that the fire was caused by arson of unknown persons, and certified that it was not due to any act of her own.  She submitted to interviews by two investigators, as well as gave statements to law enforcement officers.  Ms.

---

³ The court notes that at the time of the demand for a statement, Ms. McReynolds had already given statements to law enforcement officers and to investigators.  Those statements are some evidence of her willingness to cooperate with Scottsdale.  Of course, her prior statements were not under oath, and Scottsdale was within its rights to demand a statement under oath.  But Scottsdale also had to provide a reasonable opportunity to comply with the demand, and the jury could find on this evidence that it did not do so before denying coverage.

McReynolds testified that she completed and mailed a personal property inventory. The jury could choose to credit that testimony. Taken as a whole, the jury could reasonably conclude that Ms. McReynolds did not breach the duties of cooperation contained in the policy. Although the court might have viewed the evidence differently had it been the finder of fact, the court cannot say that the jury's determination was legally erroneous or that it was outside the bounds of reason under the evidence presented. Accordingly, the motion for judgment as a matter of law or for new trial will be denied.

### IV. *Order under Rule 58(e) Concerning Motion for Attorney's Fees*.

The court's disposition of the instant Motion for Judgment or New Trial would ordinarily trigger the 30-day period for filing a notice of appeal of the judgment. *See* Fed.R.App.P. 4(a)(4). In these circumstances, however, where there is a pending motion for attorney's fees under Rule 54(d)(2), Rule 58(e) allows the court to order that the motion for attorney's fees "have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59." In other words, if the court makes such an order, the period for filing a notice of appeal of the judgment will not begin to run until the court disposes of the motion for attorney's fees.

In the interests of streamlining the litigation, the court concludes such an order is appropriate. Accordingly, it is ordered that defendant's Motion for Attorney's Fees be treated as a timely motion under Rule 59, and that the time to file an appeal shall not begin to run until the court disposes of the defendant's motion for attorney's fees.

### V. *Conclusion*.

Plaintiff Scottsdale's Renewed Motion for Judgment as a Matter of Law or For New Trial (Doc. 116) is DENIED.

Additionally, pursuant to Fed.R.Civ.P. 58(e), the court orders that defendant's pending Motion for Attorney's Fees shall have the same effect as a timely motion under Rule 59 for purposes of determining the time to file an appeal.

IT IS SO ORDERED this   11th   Day of August, 2009, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge